BRANDY A. SARGENT (SBN 292586)
K&L GATES LLP
ONE SW COLUMBIA STREET, SUITE 1900
Portland, Oregon  97204
Telephone: 503.226.5735
Facsimile:  503.248.9085
Email: brandy.sargent@klgates.com

Attorneys for Amazon Web Services, Inc.

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

In re

HEALTHPALS, INC.,

Debtor.

Case No. 25-31059 (DM)

Chapter 7

**AMAZON WEB SERVICES INC.'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND MEMORANDUM OF POINTS AND AUTHORITIES**

Amazon Web Services, Inc. ("AWS") files this motion for relief from the automatic stay (the "Motion") to terminate the AWS Customer Agreement (the "Agreement"), which is the executory contract between Healthpals, Inc. (the "Debtor") and AWS governing AWS's provision of cloud computing and storage services to the Debtor. The Motion is supported by the John Lightbourn declaration (the "Lightbourn Declaration"), the exhibits attached thereto, and the arguments herein.

## I.    INTRODUCTION

AWS requests the entry of an order pursuant to Bankruptcy Code sections 101 and 365(d)(1) and Federal Rules of Bankruptcy Procedure Rule 6006(b) authorizing AWS to terminate the Agreement and further authorize the termination of the Debtor's AWS Accounts and all related storage and cloud computing services.

Pursuant to 11 U.S.C. § 365(d)(1), the Agreement was deemed rejected sixty days from the Petition Date. However, the Debtor's AWS Accounts continue to accrue unpaid storage and service

1

charges until the Agreement is formally terminated. AWS seeks relief from the automatic stay to proceed with formal termination given that termination will eliminate the Trustee's ability to access the accounts and result in deletion of any stored data in connection with the AWS Accounts.

## II. BACKGROUND

On December 30, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California San Francisco Division (the "Court"). Thereafter, Paul Mansdorf was appointed as the chapter 7 Trustee for the Debtor's bankruptcy estate (the "Trustee").

AWS is a worldwide leader in the provision of cloud computing and storage services. Prior to the Petition Date, the Debtor entered into the Agreement with AWS. A true and accurate copy of the Agreement is attached as Exhibit A to the Lightbourn Declaration filed in support of this Motion. AWS provides cloud computing and storage services to the Debtor pursuant to the terms of the Agreement. The Debtor's cloud computing and storage accounts with AWS are identified by an account number ending in "15154" as well as linked accounts with account numbers ending in "38246," "91280," "17100," "82783," "00135," 64006," "69831," "12002," "10946," and "88198" (collectively, the "AWS Accounts"). *See* Lightbourn Declaration. AWS invoices the Debtor on a monthly basis for services rendered by AWS in the prior month. *Id.*

Paragraph 4.1 of the Agreement allows AWS to suspend the Debtor's right to access any portion or all of the AWS service offerings should the user default on its payment obligations. Paragraph 4.2 clarifies that even with the Debtor's access suspended, the Debtor remains responsible for all fees and charges the user may incur during the period of suspension. Section 5 of the Agreement permits AWS to terminate the agreement immediately upon notice if AWS has the right to suspend the Debtor's access pursuant to Section 4.

2

Pursuant to 11 U.S.C. § 365(d)(1), the Agreement was deemed rejected on or about February 28, 2026, sixty days from the Petition Date.

Although the Agreement has been rejected, AWS has not exercised its contractual right to suspend access to the Debtor's AWS Accounts and AWS has not terminated the Agreement.

As of April 11, 2026, the Debtor's bankruptcy estate owed AWS a total of $127,484.02 for post-petition charges and $583,459.96 for pre-petition charges in connection with the AWS Accounts. *See* Lightbourn Declaration. The Debtor's AWS Accounts have been delinquent since at least February 11, 2025. *Id.*

The termination of the AWS Accounts will ultimately result in the deletion of any of the Debtor's stored data unless the Trustee moves such data from the AWS Accounts. AWS does not have any visibility into its customers' data, including any of the estate's data being stored in connection with the AWS Accounts.

The Trustee has not indicated whether he is willing to agree to AWS's termination of the AWS Accounts. Nor has the Trustee brought the AWS Accounts current. To protect against the possibility that the automatic stay may continue to apply to any data being stored in connection with the AWS Accounts, AWS brings this motion for relief from the automatic stay to permit termination of the Agreement and the AWS Accounts.

### III.  AUTHORITY

AWS provides ongoing cloud data storage and computing services to the Debtor under the terms of the Agreement, which constitutes an executory contract. Section 365(d)(1) of the Bankruptcy Code provides that, in a chapter 7 case, a debtor must assume an executory contract within a specified period of time, or else it will be deemed rejected:

> In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract . . . within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract . . . is deemed rejected.

3

11 U.S.C. § 365(d)(1).

"Congress intended this provision to 'prevent parties in contractual . . . relationships with the debtor from being left in doubt concerning their status vis-a-vis the estate.'" *Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1079 (3d Cir. 1992) (citing S. Rep. No. 989, 95th Cong., 2d Sess. 59 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5845).

The Agreement was rejected by operation of § 365(d)(1) of the Bankruptcy Code, but the contract has not been *terminated*, and AWS continues to provide services to the estate in the form of cloud storage of electronic records of the Debtor. To date, the Trustee has not expressed any intention or desire to use the AWS Accounts or any data being stored in connection therewith. Nor has the Trustee indicated that he will bring the AWS Accounts current.

Section 362(d)(1) of the Bankruptcy Code permits a court to grant relief from the automatic stay "for cause." 11 U.S.C. § 362. The term "cause as used in section 362(d) has no obvious definition and is determined on a case-by-case basis. *See, e.g.*, *In re Conejo Enterprises, Inc.*, 96 F.3d 346, 352 (9th Cir. 1996) ("Upon a showing of 'cause,' a bankruptcy court shall grant relief from the [automatic] stay . . . 'Cause' has no clear definition and is determined on a case-by-case basis.") (internal quotations omitted). In determining whether "cause" exists, courts within the Ninth Circuit have held that cause exists to lift the stay where an executory contract cannot be assumed. *See, e.g.*, *In re Hernandez*, 287 B.R. 795 (Bankr. D. Ariz. 2002) ("[C]ause exists as a matter of law to lift the automatic stay . . . In this case, the court has already determined that the Debtors cannot assume the Agreement, or otherwise treat it in their Plan. Therefore, cause exists to lift the automatic stay and allow the [creditor] to enforce whatever rights they may have under applicable non-bankruptcy law.").

Applicable law demonstrates that cause exists for the Court to lift the automatic stay to allow AWS to terminate the Agreement and the AWS Accounts. Given that the Agreement was rejected, the prejudice facing the Debtor's bankruptcy estate is minimal if any prejudice exists at all. Indeed, the

4

continued accrual of fees related to storage and cloud services could negatively impact recoveries for other creditors, while termination would cease continued accrual of such charges. Conversely, the prejudice AWS will continue to face should the stay not be lifted is significant. AWS continues to provide cloud computing and storage services to the estate without receiving any compensation or any assurances that it will be promptly compensated for its continued services. If the Court does not grant this Motion, AWS will be forced to continue to perform services for the estate indefinitely, for free, and without assurances that it will be compensated. To date, over $85,000 in post-petition charges are owed to AWS and charges continue to accrue at the average rate of more than $40,000 per month. Because the hardship facing AWS considerably outweighs any hardship to the Debtor's estate, the Court should lift the automatic stay.

For the reasons set forth herein, AWS requests that the Court enter an order providing that the Agreement is deemed immediately terminated and AWS is authorized to take any and all actions to effectuate such termination of the AWS Accounts and services, including terminating any storage of records of the Debtor.[1]

## IV. NOTICE

Notice of this Motion has been given to: (i) the Office of the United States Trustee for the Northern District of California, 450 Golden Gate Ave. 5th Fl., #05-0153, San Francisco, CA 94102; (ii) counsel for the Trustee, Finestone Hayes LLP, Attn: Brent D. Meyer; (iii) the Trustee; and (iv) those parties requesting notice pursuant to Bankruptcy Rule 2002.

---

[1] Upon entry of the order requested by AWS, AWS will remove from cloud storage all records relating to the AWS Accounts and such records will no longer be accessible or recoverable. AWS reserves its rights to assert an administrative priority claim on account of post-petition services provided to the estate in connection with the Debtor's AWS Accounts.

5

## V.  CONCLUSION

For the foregoing reasons, AWS respectfully requests that this Court enter an order granting AWS relief from the automatic stay to immediately terminate the Agreement and AWS Accounts and services related to the same, including the storage of data of the Debtor.

K&L GATES LLP

Dated: May 22, 2026

By: /s/ *Brandy A. Sargent*
Brandy A. Sargent
*Attorneys for Amazon Web Services, Inc.*

6

BRANDY A. SARGENT (SBN 292586)
K&L GATES LLP
ONE SW COLUMBIA STREET, SUITE 1900
Portland, Oregon  97204
Telephone: 503.226.5735
Facsimile:  503.248.9085
Email: brandy.sargent@klgates.com

Attorneys for Amazon Web Services, Inc.

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>HEALTHPALS, INC.,<br><br>      Debtor. | Case No. 25-31059 (DM)<br><br>Chapter 7<br><br>**DECLARATION IN SUPPORT OF AMAZON WEB SERVICES, INC.'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND MEMORANDUM OF POINTS AND AUTHORITIES** |

I, John Lightbourn, pursuant to 28 U.S.C. § 1746, hereby certify and declare as follows:

I am the Global Head of Credit Risk at Amazon Web Services, Inc. ("AWS"). I am over the age of eighteen, am competent to testify, and I have personal knowledge of the facts set forth herein.

AWS is a worldwide leader in the provision of cloud computing and storage services. Healthpals, Inc., prior to filing for bankruptcy, entered into the AWS Customer Agreement (the "Agreement") with AWS. A true and accurate copy of the Agreement is attached as Exhibit A. AWS invoiced the Debtor each month for services rendered in the month prior.

AWS provides cloud computing and storage services to the Debtor pursuant to the terms of the Agreement. The Debtor's cloud computing and storage accounts with AWS are identified by an account number ending in "15154" as well as linked accounts with account numbers ending

1

in "38246," "91280," "17100," "82783," "00135," 64006," "69831," "12002," "10946," and "88198" (collectively, the "AWS Accounts"). The AWS Accounts are governed by the terms of the Agreement.

As of April 11, 2026, the Debtor's bankruptcy estate owed AWS a total of $127,484.02 for post-petition charges and $583,459.96 for pre-petition charges in connection with the AWS Accounts. The Debtor's AWS Accounts have been delinquent since at least February 11, 2025. Attached hereto as Exhibit B is an accurate statement of charges owed by the Debtor in connection with the AWS Accounts that remain unpaid.

AWS continues to provide post-petition storage services to the Debtor's estate despite the fact that the Trustee has not paid for any such post-petition charges accrued in connection with the AWS Accounts.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

EXECUTED this 16th day of April, 2026.



Signed by:

John Lightbourn
683E5AE1557541C...

John Lightbourn
Global Head of Credit Risk
Amazon Web Services, Inc.

2

# EXHIBIT A

# AWS Customer Agreement

**For additional information related to each AWS Contracting Party, see the AWS Contracting Party FAQs.

*Please note that as of August 1, 2025, customers located in Indonesia contract with our Indonesia based AWS Contracting Party, as provided in Section 12. See the AWS Indonesia FAQs for more information.

*Please note that as of January 1, 2026, customers located in Taiwan who have provided a Unified Business Number (UBN) and are using the invoicing payment method for their accounts contract with our Taiwan based AWS Contracting Party, as provided in Section 12. See the AWS Taiwan FAQs for more information.

*Please note that as of January 1, 2026, customers located in Mexico who use the invoicing payment methods, and as of February 1, 2026, customers who use Visa or Mastercard as payment method, and have provided an address located in Mexico, contract with our Mexico based AWS Contracting Party, as provided in Section 12. See the AWS Mexico SoR FAQs for more information.

☆

## Last Updated: March 13, 2026

See What's Changed

This AWS Customer Agreement (this "**Agreement**") contains the terms and conditions that govern your access to and use of the Services (as defined below) and is an agreement between the applicable AWS Contracting Party specified in Section 12 below (also referred to as "**AWS**," "**we**," "**us**," or "**our**") and you or the entity you represent ("**you**" or "**your**"). This Agreement takes effect when you click an "I Accept" button or check box presented with these terms or, if earlier, when you use any of the Services (the "**Effective Date**"). You represent to us that you are lawfully able to enter into contracts (e.g., you are not a minor). If you are entering into this Agreement for an entity, such as the company you work for, you represent to us that you have legal authority to bind that entity. Please see Section 12 for definitions of certain capitalized terms used in this Agreement.

## 1. AWS Responsibilities

1.1 General. You may access and use the Services in accordance with this Agreement. Service Level Agreements and Service Terms apply to certain Services.

1.2 Third-Party Content. Third-Party Content may be used by you at your election. Third-Party Content is governed by this Agreement and, if applicable, separate terms and conditions accompanying such Third-Party Content, which terms and conditions may include separate fees and charges.

Case: 25-31059    Doc# 24    Filed: 05/22/26    Entered: 05/22/26 10:33:33    Page 10 of 32

1.3 AWS Security. Without limiting Section 8 or your obligations under Section 2.2, we will implement reasonable and appropriate measures designed to help you secure Your Content against accidental or unlawful loss, access or disclosure.

1.4 Data Privacy. You may specify the AWS regions in which Your Content will be stored. You consent to the storage of Your Content in, and transfer of Your Content into, the AWS regions you select. We will not access or use Your Content except as necessary to maintain or provide the Services, or as necessary to comply with the law or a binding order of a governmental body. We will not (a) disclose Your Content to any government or third party or (b) move Your Content from the AWS regions selected by you; except in each case as necessary to comply with the law or a binding order of a governmental body. Unless it would violate the law or a binding order of a governmental body, we will give you notice of any legal requirement or order referred to in this Section 1.4. We will only use your Account Information in accordance with the Privacy Notice, and you consent to such usage. The Privacy Notice does not apply to Your Content.

1.5 Notice of Changes to the Services. We may change or discontinue any of the Services from time to time. We will provide you at least 12 months' prior notice before discontinuing a material functionality of a Service that we make generally available to customers and that you are using. AWS will not be obligated to provide such notice under this Section 1.5 if the discontinuation is necessary to (a) address an emergency, or risk of harm to the Services or AWS, (b) respond to claims, litigation, or loss of license rights related to third party intellectual property rights, or (c) comply with law, but should any of the preceding occur AWS will provide you with as much prior notice as is reasonably practicable under the circumstances.

1.6 Notice of Changes to the Service Level Agreements. We may change, discontinue or add Service Level Agreements, provided, however, that we will provide at least 90 days' advance notice for adverse changes to any Service Level Agreement.

# 2. Your Responsibilities.

2.1 Your Accounts. You will comply with the terms of this Agreement and all laws, rules and regulations applicable to your use of the Services. To access the Services, you must have an AWS account associated with a valid email address and a valid form of payment. Unless explicitly permitted by the Service Terms, you will only create one account per email address. Except to the extent caused by our breach of this Agreement, (a) you are responsible for all activities that occur under your account, regardless of whether the activities are authorized by you or undertaken by you, your employees or a third party (including your contractors, agents or End Users), and (b) we and our affiliates are not responsible for unauthorized access to your account.

2.2 Your Content. You are responsible for Your Content. You will ensure that Your Content and your and End Users' use of Your Content or the Services will not violate any of the Policies or any applicable law.

2.3 Your Security and Backup. You are responsible for properly configuring and using the Services and otherwise taking appropriate action to secure, protect and backup your accounts and Your Content in a manner that will provide appropriate security and protection, which might include use of encryption to protect Your Content from unauthorized access and routinely archiving Your Content.

2.4 Log-In Credentials and Account Keys. AWS log-in credentials and private keys generated by the Services are for your internal use only and you will not sell, transfer or sublicense them to any other entity or person, except that you may disclose your private key to your agents and subcontractors performing work on your behalf.

2.5 End Users. You will be deemed to have taken any action that you permit, assist or facilitate any person or entity to take related to this Agreement, Your Content or use of the Services. You are responsible for End Users' use of Your Content and the Services, and for their compliance with your obligations under this Agreement. If you become aware of any violation of your obligations under this Agreement caused by an End User, you will immediately suspend access to Your Content and the Services by such End User. We do not provide any support or services to End Users unless we have a separate agreement with you or an End User obligating us to provide such support or services.

# 3. Fees and Payment.

3.1 Service Fees. We calculate and bill fees and charges monthly. We may bill you more frequently for fees accrued if we reasonably suspect that your account is fraudulent or at risk of non-payment. You will pay us the applicable fees and charges for use of the Services as described on the AWS Site using one of the payment methods we support. If there is a problem charging your default payment method, we may charge any other valid payment method associated with your account. All amounts payable by you under this Agreement will be paid to us without setoff or counterclaim, and without any deduction or withholding. Fees and charges for any new Service or new feature of a Service will be effective when we post updated fees and charges on the AWS Site, unless we expressly state otherwise in a notice. We may increase or add new fees and charges for any existing Services you are using by giving you at least 30 days' prior notice. We may elect to charge you interest at the rate of 1.5% per month (or the highest rate permitted by law, if less) on all late payments. If we suspend your account under Section 4.1 or terminate your use of the Services pursuant to Section 5.2(b)(ii), we may elect not to bill you for fees and charges after suspension unless your account is reinstated.

3.2 Taxes.

(a) Each party will be responsible, as required under applicable law, for identifying and paying all taxes and other governmental fees and charges (and any penalties, interest, and other additions thereto) that are imposed on that party upon or with respect to the transactions and payments under this Agreement. All fees payable by you are exclusive of Indirect Taxes, except where applicable law requires otherwise. We may charge and you will pay applicable Indirect Taxes that we are legally obligated or authorized to collect from you. You will provide such information to us as reasonably required to determine whether we are obligated to collect Indirect Taxes from you. We will not collect, and you will not pay, any Indirect Tax for which you furnish us a properly completed exemption certificate or a direct payment permit certificate for which we can claim an available exemption from such Indirect Tax. All payments made by you to us under this Agreement will be made free and clear of any deduction or withholding, as required by law. If any such deduction or withholding (including cross-border withholding taxes) is required on any payment, you will pay such additional amounts as are necessary so that the net amount received by us is equal to the amount then due and payable under this Agreement. We will provide you with such tax forms as are reasonably requested in order to reduce or eliminate the amount of any withholding or deduction for taxes in respect of payments made under this Agreement.

(b) If the applicable AWS Contracting Party is Amazon Web Services India Private Limited ("AWS India") (formerly known as Amazon Internet Services Private Limited), the parties agree that the provisions of this Section 3.2(b) will apply.

You acknowledge that AWS India may display the applicable fees and charges for the Services on the Site in USD (or such other currency as AWS India may deem fit). However, AWS India will invoice you in INR

calculated and converted in accordance with the conversion rate determined by us on the date of invoice ("INR Equivalent Fees"). You will only be liable to pay the INR Equivalent Fees indicated in each invoice.

We will invoice you from our registered office at the address of your establishment (as registered with the tax authorities, if applicable) receiving the Services in accordance with the applicable indirect tax laws.

All fees and charges payable under this Agreement will be exclusive of applicable national, state or local indirect taxes ("Taxes") that AWS India is legally obligated to charge under applicable law. For the purpose of this clause, local indirect taxes include Goods and Services Tax ("GST"), which includes the Central Goods and Services Tax ("CGST"), the State Goods and Services Tax ("SGST"), the Union Territory Goods and Services Tax ("UGST"), the Integrated Goods and Services Tax ("IGST") as may be applicable. The Taxes charged by AWS India will be stated in the invoice pursuant to applicable laws. AWS India may charge and you will pay any applicable Taxes, which are stated separately on the invoice. As per the statutory requirement under GST, you will provide all necessary information such as the correct GST registered address, legal name and GSTIN ("GST Information") in order for AWS India to issue correct GST invoices as per the applicable legal requirements. In the event, the GST invoice is incorrect, you will inform us in a timely manner, to enable AWS India to correct the GST tax invoice. AWS India will determine the place of supply for the Services based on the GST Information provided by you and accordingly, charge GST (CGST and SGST/UTGST or IGST) on its invoice. Any withholding taxes that may be applicable to the fees and charges payable to us are for our account. You will pay the fees and charges in our invoice in full (gross) without applying any withholding taxes. If you separately deposit applicable withholding taxes on such fees and charges to the applicable government treasury and issue us a withholding tax certificate evidencing such deposit, following receipt of the withholding tax certificate in original form, we will reimburse to you an amount equal to the taxes that are evidenced as deposited.



# 4. Temporary Suspension.

4.1 Generally. We may suspend your or any End User's right to access or use any portion or all of the Services immediately upon notice to you if we reasonably determine:

(a) your or an End User's use of the Services (i) poses a security risk to the Services or any third party, (ii) could adversely impact our systems, the Services or the systems or Content of any other AWS customer, (iii) could subject us, our affiliates, or any third party to liability, or (iv) could be fraudulent;

(b) you are, or any End User is, in material breach of this Agreement;

(c) you are in breach of your payment obligations under Section 3; or

(d) you have ceased to operate in the ordinary course, made an assignment for the benefit of creditors or similar disposition of your assets, or become the subject of any bankruptcy, reorganization, liquidation, dissolution or similar proceeding.

4.2 Effect of Suspension. If we suspend your right to access or use any portion or all of the Services:

(a) you will be responsible for all fees and charges you incur during the period of suspension that we bill to you; and

(b) you will not be entitled to any service credits under the Service Level Agreements for any period of suspension.

# 5. Term; Termination.

5.1 Term. The term of this Agreement will commence on the Effective Date and will remain in effect until terminated under this Section 5. Any notice of termination of this Agreement by either party to the other must include a Termination Date that complies with the notice periods in Section 5.2.

5.2 Termination.

(a) Termination for Convenience. You may terminate this Agreement for any reason by providing us notice and closing your account for all Services for which we provide an account closing mechanism. We may terminate this Agreement for any reason by providing you at least 30 days' advance notice.

(b) Termination for Cause.

(i) By Either Party. Either party may terminate this Agreement for cause if the other party is in material breach of this Agreement and the material breach remains uncured for a period of 30 days from receipt of notice by the other party. No later than the Termination Date, you will close your account.

(ii) By Us. We may also terminate this Agreement immediately upon notice to you:

(A) for cause if we have the right to suspend under Section 4 and the issue giving us the right to suspend either:

a. is not capable of being remedied; or

b. has not been remedied within 30 days of us suspending your service under Section 4.1;

(B) if our relationship with a third-party partner who provides software or other technology we use to provide the Services expires, terminates or requires us to change the way we provide the software or other technology as part of the Services; or

(C) in order to comply with the law or requests of governmental entities.

5.3 Effect of Termination.

(a) Generally. Upon the Termination Date:

(i) except as provided in Sections 5.3(a)(iv) and 5.3(b), all your rights under this Agreement immediately terminate;

(ii) you remain responsible for all fees and charges you have incurred through the Termination Date and are responsible for any fees and charges you incur during the post-termination period described in Section 5.3(b) that we bill to you;

(iii) you will immediately return or, if instructed by us, destroy all AWS Content in your possession; and

(iv) Sections 2.1, 3, 5.3, 6 (except Section 6.3), 7, 8, 9, 11 and 12 will continue to apply in accordance with their terms.

(b) Post-Termination. Unless we terminate your use of the Services pursuant to Section 5.2(b), during the 30 days following the Termination Date:

(i) we will not take action to remove from the AWS systems any of Your Content as a result of the termination; and

(ii) we will allow you to retrieve Your Content from the Services only if you have paid all amounts due under this Agreement.

For any use of the Services after the Termination Date, the terms of this Agreement will apply and you will pay the applicable fees at the rates under Section 3.

# 6. Proprietary Rights.

6.1 Your Content. Except as provided in this Section 6, we obtain no rights under this Agreement from you (or your licensors) to Your Content. You consent to our use of Your Content to provide the Services to you and any End Users.

6.2 Adequate Rights. You represent and warrant to us that: (a) you or your licensors own all right, title, and interest in and to Your Content and Suggestions; (b) you have all rights in Your Content and Suggestions necessary to grant the rights contemplated by this Agreement; and (c) none of Your Content or End Users' use of Your Content or the Services will violate the Acceptable Use Policy.

6.3 Intellectual Property License. The Intellectual Property License applies to your use of AWS Content and the Services.

6.4 Restrictions. Neither you nor any End User will use the AWS Content or Services in any manner or for any purpose other than as expressly permitted by this Agreement. Neither you nor any End User will, or will attempt to (a) reverse engineer, disassemble, or decompile the Services or AWS Content or apply any other process or procedure to derive the source code of any software included in the Services or AWS Content (except to the extent applicable law doesn't allow this restriction), (b) access or use the Services or AWS Content in a way intended to avoid incurring fees or exceeding usage limits or quotas, or (c) resell the Services or AWS Content. The AWS Trademark Guidelines apply to your use of the AWS Marks. You will not misrepresent or embellish the relationship between us and you (including by expressing or implying that we support, sponsor, endorse, or contribute to you or your business endeavors). You will not imply any relationship or affiliation between us and you except as expressly permitted by this Agreement.

6.5 Suggestions. If you provide any Suggestions to us or our affiliates, we and our affiliates will be entitled to use the Suggestions without restriction. You hereby irrevocably assign to us all right, title, and interest in and to the Suggestions and agree to provide us any assistance we require to document, perfect, and maintain our rights in the Suggestions.

# 7. Indemnification.

7.1 General. To the extent permitted by applicable law, you will defend, indemnify, and hold harmless us, our affiliates and licensors, and each of their respective employees, officers, directors, and representatives from and against any Losses arising out of or relating to any third-party claim concerning: (a) your or any End Users' use of the Services (including any activities under your AWS account and use by your employees and personnel); (b) breach of this Agreement or violation of applicable law by you, End Users or Your Content; or (c) a dispute between you and any End User. You will reimburse us for reasonable attorneys' fees, as well as our employees' and contractors' time and materials spent responding to any third party

subpoena or other compulsory legal order or process associated with third party claims described in (a) through (c) above at our then-current hourly rates.

7.2 Intellectual Property.

(a) Subject to the limitations in this Section 7, AWS will defend you and your employees, officers, and directors against any third-party claim alleging that the Services infringe or misappropriate that third party's intellectual property rights, and will pay the amount of any adverse final judgment or settlement.

(b) Subject to the limitations in this Section 7, you will defend AWS, its affiliates, and their respective employees, officers, and directors against any third-party claim alleging that any of Your Content infringes or misappropriates that third party's intellectual property rights, and will pay the amount of any adverse final judgment or settlement.

(c) Neither party will have obligations or liability under this Section 7.2 arising from infringement by combinations of the Services or Your Content, as applicable, with any other product, service, software, data, content or method. In addition, AWS will have no obligations or liability arising from your or any End User's use of the Services after AWS has notified you to discontinue such use. The remedies provided in this Section 7.2 are the sole and exclusive remedies for any third-party claims of infringement or misappropriation of intellectual property rights by the Services or by Your Content.

(d) For any claim covered by Section 7.2(a), AWS will, at its election, either: (i) procure the rights to use that portion of the Services alleged to be infringing; (ii) replace the alleged infringing portion of the Services with a non-infringing alternative; (iii) modify the alleged infringing portion of the Services to make it non-infringing; or (iv) terminate the allegedly infringing portion of the Services or this Agreement.

7.3 Process. The obligations under this Section 7 will apply only if the party seeking defense or indemnity: ☆ (a) gives the other party prompt written notice of the claim; (b) permits the other party to control the defense and settlement of the claim; and (c) reasonably cooperates with the other party (at the other party's expense) in the defense and settlement of the claim. In no event will a party agree to any settlement of any claim that involves any commitment, other than the payment of money, without the written consent of the other party.

# 8. Disclaimers.

THE SERVICES AND AWS CONTENT ARE PROVIDED "AS IS." EXCEPT TO THE EXTENT PROHIBITED BY LAW, OR TO THE EXTENT ANY STATUTORY RIGHTS APPLY THAT CANNOT BE EXCLUDED, LIMITED OR WAIVED, WE AND OUR AFFILIATES AND LICENSORS (A) MAKE NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE REGARDING THE SERVICES OR AWS CONTENT OR THE THIRD-PARTY CONTENT, AND (B) DISCLAIM ALL WARRANTIES, INCLUDING ANY IMPLIED OR EXPRESS WARRANTIES (I) OF MERCHANTABILITY, SATISFACTORY QUALITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT, OR QUIET ENJOYMENT, (II) ARISING OUT OF ANY COURSE OF DEALING OR USAGE OF TRADE, (III) THAT THE SERVICES OR AWS CONTENT OR THIRD-PARTY CONTENT WILL BE UNINTERRUPTED, ERROR FREE OR FREE OF HARMFUL COMPONENTS, AND (IV) THAT ANY CONTENT WILL BE SECURE OR NOT OTHERWISE LOST OR ALTERED.

# 9. Limitations of Liability.

9.1 Liability Disclaimers. EXCEPT FOR PAYMENT OBLIGATIONS UNDER SECTION 7, NEITHER AWS NOR YOU, NOR ANY OF THEIR AFFILIATES OR LICENSORS, WILL HAVE LIABILITY TO THE OTHER UNDER ANY CAUSE OF ACTION OR THEORY OF LIABILITY, EVEN IF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LIABILITY, FOR (A) INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES, (B) THE VALUE OF YOUR CONTENT, (C) LOSS OF PROFITS, REVENUES, CUSTOMERS, OPPORTUNITIES, OR GOODWILL, OR (D) UNAVAILABILITY OF THE SERVICES OR AWS CONTENT (THIS DOES NOT LIMIT ANY SERVICE CREDITS UNDER SERVICE LEVEL AGREEMENTS).

9.2 Damages Cap. EXCEPT FOR PAYMENT OBLIGATIONS UNDER SECTION 7, THE AGGREGATE LIABILITY UNDER THIS AGREEMENT OF EITHER AWS OR YOU, AND ANY OF OUR RESPECTIVE AFFILIATES OR LICENSORS, WILL NOT EXCEED THE AMOUNTS PAID BY YOU TO AWS UNDER THIS AGREEMENT FOR THE SERVICES THAT GAVE RISE TO THE LIABILITY DURING THE 12 MONTHS BEFORE THE LIABILITY AROSE; EXCEPT THAT NOTHING IN THIS SECTION 9 WILL LIMIT (A) YOUR OBLIGATION TO PAY AWS FOR YOUR USE OF THE SERVICES PURSUANT TO SECTION 3, OR ANY OTHER PAYMENT OBLIGATIONS UNDER THIS AGREEMENT, OR (B) ANY PARTY'S LIABILITY TO THE EXTENT SUCH LIABILITY CANNOT BE LIMITED UNDER APPLICABLE LAW.

# 10. Modifications to the Agreement.

We may modify this Agreement (including any Policies) at any time by posting a revised version on the AWS Site or by otherwise notifying you in accordance with Section 11.10. The modified terms will become effective upon posting or, if we notify you by email, as stated in the email message. By continuing to use the Services or AWS Content after the effective date of any modifications to this Agreement, you agree to be bound by the modified terms. It is your responsibility to check the AWS Site regularly for modifications to this Agreement. We last modified this Agreement on the date listed at the beginning of this Agreement.

# 11. Miscellaneous.

11.1 Assignment. You will not assign or otherwise transfer this Agreement or any of your rights and obligations under this Agreement, without our prior written consent. Any assignment or transfer in violation of this Section 11.1 will be void. We may assign this Agreement without your consent (a) in connection with a merger, acquisition or sale of all or substantially all of our assets, or (b) to any affiliate or as part of a corporate reorganization; and effective upon such assignment, the assignee is deemed substituted for AWS as a party to this Agreement and AWS is fully released from all of its obligations and duties to perform under this Agreement. Subject to the foregoing, this Agreement will be binding upon, and inure to the benefit of the parties and their respective permitted successors and assigns.

11.2 Entire Agreement. This Agreement incorporates the Policies by reference and is the entire agreement between you and us regarding the subject matter of this Agreement. This Agreement supersedes all prior or contemporaneous representations, understandings, agreements, or communications between you and us, whether written or verbal, regarding the subject matter of this Agreement (but does not supersede prior commitments to purchase Services such as Amazon EC2 Reserved Instances). None of the parties will be bound by any term, condition or other provision that is different from or in addition to the provisions of this Agreement (whether or not it would materially alter this Agreement) including for example, any term, condition or other provision (a) submitted by you in any order, receipt, acceptance, confirmation,

Case: 25-31059   Doc# 24   Filed: 05/22/26   Entered: 05/22/26 10:33:33   Page 17 of 32

correspondence or other document, (b) related to any online registration, response to any Request for Bid, Request for Proposal, Request for Information, or other questionnaire, or (c) related to any invoicing process that you submit or require us to complete. If the terms of this document are inconsistent with the terms contained in any Policy, the terms contained in this document will control, except that the Service Terms will control over this document.

11.3 Force Majeure. Except for payment obligations, neither party nor any of their affiliates will be liable for any delay or failure to perform any obligation under this Agreement where the delay or failure results from any cause beyond its reasonable control, including acts of God, labor disputes or other industrial disturbances, electrical or power outages, utilities or other telecommunications failures, earthquake, storms or other elements of nature, blockages, embargoes, riots, acts or orders of government, acts of terrorism, or war.

11.4 Governing Law. The Governing Laws, without reference to conflict of law rules, govern this Agreement and any dispute of any sort that might arise between you and us. The United Nations Convention for the International Sale of Goods does not apply to this Agreement.

11.5 Disputes. Any dispute or claim relating in any way to your use of the Services, or to any products or services sold or distributed by AWS will be adjudicated in the Governing Courts, and you consent to exclusive jurisdiction and venue in the Governing Courts, subject to the additional provisions below.

(a) If the applicable AWS Contracting Party is Amazon Web Services, Inc., Amazon Web Services Canada, Inc., Amazon Web Services Korea LLC, Amazon Web Services Singapore Private Limited or PT Amazon Web Services Indonesia, the parties agree that the provisions of this Section 11.5(a) will apply. Disputes will be resolved by binding arbitration, rather than in court, except that either party may elect to proceed in small claims court if your claims qualify. The Federal Arbitration Act and federal arbitration law apply to this Agreement, except that if Amazon Web Services Canada, Inc. is the applicable AWS Contracting Party the Ontario Arbitration Act will apply to this Agreement. There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of this Agreement as a court would. Before you may begin an arbitration proceeding, you must send a letter notifying us of your intent to pursue arbitration and describing your claim to our registered agent Corporation Service Company, 300 Deschutes Way SW, Suite 304, Tumwater, WA 98501. The arbitration will be conducted by the American Arbitration Association (AAA) under its commercial rules, which are available at www.adr.org or by calling 1-800-778-7879. Payment of filing, administration and arbitrator fees will be governed by the AAA commercial fee schedule. We and you agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action. We and you further agree that the underlying award in arbitration may be appealed pursuant to the AAA's Optional Appellate Arbitration Rules. If for any reason a claim proceeds in court rather than in arbitration we and you waive any right to a jury trial. Notwithstanding the foregoing we and you both agree that you or we may bring suit in court to enjoin infringement or other misuse of intellectual property rights.

(b) If the applicable AWS Contracting Party is Amazon Web Services South Africa Proprietary Limited, the parties agree that the provisions of this Section 11.5(b) will apply. Disputes will be resolved by arbitration in accordance with the then-applicable rules of the Arbitration Foundation of Southern Africa, and judgment on the arbitral award must be entered in the Governing Court. The Arbitration Act, No. 42 of 1965 applies to this Agreement. The arbitration will take place in Johannesburg. There will be three arbitrators. The fees and expenses of the arbitrators and the administering authority, if any, will be paid in equal proportion by the parties.

**(c) If the applicable AWS Contracting Party is Amazon AWS Serviços Brasil Ltda., the parties agree that the provisions of this Section 11.5(c) will apply. Disputes will be resolved by binding arbitration, rather than in court, in accordance with the then-applicable Rules of Arbitration of the International Chamber of Commerce, and judgment on the arbitral award may be entered in any court having jurisdiction. The arbitration will take place in the City of São Paulo, State of São Paulo, Brazil. There will be three arbitrators. The fees and expenses of the arbitrators and the administering authority, if any, will be paid in equal proportion by the parties. The parties agree that the existence of and information relating to any such arbitration proceedings will not be disclosed by either party and will constitute confidential information. The Governing Courts will have exclusive jurisdiction for the sole purposes of (i) ensuring the commencement of the arbitral proceedings; and (ii) granting conservatory and interim measures prior to the constitution of the arbitral tribunal.**

(d) If the applicable AWS Contracting Party is Amazon Web Services Australia Pty Ltd, the parties agree that the provisions of this Section 11.5(d) will apply. Disputes will be resolved by arbitration administered by the Australian Center for International Commercial Arbitration ("ACICA") in accordance with the then-applicable ACICA Arbitration Rules, and judgment on the arbitral award may be entered in any court having jurisdiction. The arbitration will take place in Sydney, Australia. There will be three arbitrators. The fees and expenses of the arbitrators and the administering authority, if any, will be paid in equal proportion by the parties. The parties agree that the existence of and information relating to any such arbitration proceedings will not be disclosed by either party and will constitute confidential information.

(e) If the applicable AWS Contracting Party is Amazon Web Services New Zealand Limited, the parties agree that the provisions of this Section 11.5(e) will apply. Disputes will be resolved by arbitration administered by the New Zealand Dispute Resolution Centre ("NZDRC") in accordance with the then-applicable Arbitration Rules of NZDRC, and judgment on the arbitral award may be entered in any court having jurisdiction. The arbitration will take place in Auckland, New Zealand. There will be three arbitrators. The fees and expenses of the arbitrators and the administering authority, if any, will be paid in equal proportion by the parties. The parties agree that the existence of and information relating to any such arbitration proceedings will not be disclosed by either party and will constitute confidential information.

(f) If the applicable AWS Contracting Party is Amazon Web Services Malaysia Sdn. Bhd. (Registration No. 201501028710 (1154031-W)), the parties agree that the provisions of this Section 11.5(f) will apply. Disputes will be resolved by arbitration administered by the Singapore International Arbitration Centre ("SIAC") in accordance with the then-applicable Arbitration Rules of SIAC, and judgment on the arbitral award may be entered in any court having jurisdiction. The arbitration will take place in Singapore. There will be three arbitrators. The fees and expenses of the arbitrators and the administering authority, if any, will be paid in equal proportion by the parties. The parties agree that the existence of and information relating to any such arbitration proceedings will not be disclosed by either party and will constitute confidential information.

(g) If the applicable AWS Contracting Party is AWS India, the parties agree that the provisions of this Section 11.5(g) will apply. Disputes will be resolved by binding arbitration, rather than in court. Arbitration will be conducted by a panel consisting of three (3) arbitrators, with one (1) nominated by each party and the third chosen by the two (2) arbitrators so nominated. The decision and award will be determined by the majority of the panels and shall be final and binding upon the parties. The arbitration will be conducted in accordance with the provisions of the Arbitration and Conciliation Act, 1996 of India, as may be in force from time to time. The arbitration proceedings will be conducted in English, and the seat of the arbitration will be New Delhi. The cost of the arbitration, including fees and expenses of the arbitrator, shall be shared equally by the parties, unless the award otherwise provides. The courts at New Delhi shall

have the exclusive jurisdiction for all arbitral applications. The Parties agree that the existence of and information relating to any such arbitration proceedings will not be disclosed by either party. Notwithstanding the foregoing, any party may seek injunctive relief in any court of competent jurisdiction for any actual or alleged infringement of such party's, its affiliates' or any third party's intellectual property or other proprietary rights.

(h) If the applicable AWS Contracting Party is AWS Turkey Pazarlama Teknoloji ve Danışmanlık Hizmetleri Limited Şirketi, the parties agree that the provisions of this Section 11.5(h) will apply. Disputes will be resolved by arbitration administered by the International Chamber of Commerce International Court of Arbitration (the "ICC Court") in accordance with the then-applicable arbitration rules (the "ICC Rules").The arbitration proceedings will be conducted in English, and the seat of arbitration will be Zurich. There will be three arbitrators. Each party will appoint one arbitrator in accordance with the ICC Rules. Within 30 days of the appointment of the co-arbitrators, the two appointed arbitrators will appoint the third arbitrator as the president of the arbitral tribunal. If the twoappointed arbitrators fail to appoint a third arbitrator as the president within such 30 day period, then the ICC Court will appoint the president. The parties agree that the existence of and information relating to any such arbitration proceedings will not be disclosed by either party and will constitute confidential information.

(i) If the applicable AWS Contracting Party is Amazon Web Services Taiwan Limited, the parties agree that the provisions of this Section 11.5(i) will apply. Disputes will be resolved by arbitration administered by the Chinese Arbitration Association, Taipei ("**CAA**") in accordance with the then-applicable Arbitration Rules of CAA, and judgment on the arbitral award may be entered in any court having jurisdiction. The arbitration will take place in Taipei, Taiwan. There will be three arbitrators. The fees and expenses of the arbitrators and the administering authority, if any, will be paid in equal proportion by the parties. The arbitration proceedings will be conducted in English. The parties agree that the existence of and information relating to any such arbitration proceedings will not be disclosed by either party and will constitute confidential information.

(j) If the applicable AWS Contracting Party is Amazon Web Services Mexico, S. de R.L. de C.V., the parties agree that the provisions of this Section 11.5(j) will apply. Disputes will be resolved by binding arbitration, rather than in court, in accordance with the then-applicable Rules of Arbitration of the International Chamber of Commerce, and judgment on the arbitral award may be entered in any court having jurisdiction. The arbitration will take place in Mexico City, Mexico. There will be three arbitrators. The fees and expenses of the arbitrators and the administering authority, if any, will be paid in equal proportion by the parties. The parties agree that the existence of and information relating to any such arbitration proceedings will not be disclosed by either party and will constitute confidential information. The Governing Courts will have exclusive jurisdiction for the sole purposes of (i) ensuring the commencement of the arbitral proceedings; and (ii) granting conservatory and interim measures prior to the constitution of the arbitral tribunal.

11.6 Trade Compliance. In connection with this Agreement, each party will comply with all applicable import, re-import, sanctions, anti-boycott, export, and re-export control laws and regulations, including all such laws and regulations that apply to a U.S. company, such as the Export Administration Regulations, the International Traffic in Arms Regulations, and economic sanctions programs implemented by the Office of Foreign Assets Control. For clarity, you are solely responsible for compliance related to the manner in which you choose to use the Services or AWS Content, including your transfer and processing of Your Content, the provision of Your Content to End Users, and the AWS region in which any of the foregoing occur. You represent and warrant that you and your financial institutions, or any party that owns or controls you or your financial institutions, are not subject to sanctions or otherwise designated on any list of prohibited or restricted parties, including but not limited to the lists maintained by the United Nations

Security Council, the U.S. Government (e.g., the Specially Designated Nationals List and Foreign Sanctions Evaders List of the U.S. Department of Treasury, and the Entity List of the U.S. Department of Commerce), the European Union or its Member States, or other applicable government authority.

11.7 Independent Contractors; Non-Exclusive Rights. We and you are independent contractors, and this Agreement will not be construed to create a partnership, joint venture, agency, or employment relationship. Neither party, nor any of their respective affiliates, is an agent of the other for any purpose or has the authority to bind the other. Both parties reserve the right (a) to develop or have developed for it products, services, concepts, systems, or techniques that are similar to or compete with the products, services, concepts, systems, or techniques developed or contemplated by the other party, and (b) to assist third party developers or systems integrators who may offer products or services which compete with the other party's products or services.

11.8 Language. All communications and notices made or given pursuant to this Agreement must be in the English language. If we provide a translation of the English language version of this Agreement, the English language version of the Agreement will control if there is any conflict.

11.9 Confidentiality and Publicity. You may use AWS Confidential Information only in connection with your use of the Services or AWS Content as permitted under this Agreement. You will not disclose AWS Confidential Information during the Term or at any time during the 5-year period following the end of the Term. You will take all reasonable measures to avoid disclosure, dissemination or unauthorized use of AWS Confidential Information, including, at a minimum, those measures you take to protect your own confidential information of a similar nature. You will not issue any press release or make any other public communication with respect to this Agreement or your use of the Services or AWS Content.

11.10 Notice.

(a) To You. We may provide any notice to you under this Agreement by:

(i) posting a notice on the AWS Site; or

(ii) sending a message to the email address then associated with your account.

Notices we provide by posting on the AWS Site will be effective upon posting and notices we provide by email will be effective when we send the email. It is your responsibility to keep your email address current. You will be deemed to have received any email sent to the email address then associated with your account when we send the email, whether or not you actually receive the email.

(b) To Us. To give us notice under this Agreement, you must contact AWS by facsimile transmission or personal delivery, overnight courier or registered or certified mail to the facsimile number or mailing address, as applicable, listed for the applicable AWS Contracting Party in Section 12 below. We may update the facsimile number or address for notices to us by posting a notice on the AWS Site. Notices provided by personal delivery will be effective immediately. Notices provided by facsimile transmission or overnight courier will be effective one business day after they are sent. Notices provided registered or certified mail will be effective three business days after they are sent.

11.11 No Third-Party Beneficiaries. Except as set forth in Section 7, this Agreement does not create any third-party beneficiary rights in any individual or entity that is not a party to this Agreement.

11.12 U.S. Government Rights. The Services and AWS Content are provided to the U.S. Government as "commercial services," "commercial computer software," "commercial computer software documentation," and "technical data" with the same rights and restrictions generally applicable to the Services and AWS

Case: 25-31059    Doc# 24    Filed: 05/22/26    Entered: 05/22/26 10:33:33    Page 21 of 32

Content. If you are using the Services and AWS Content on behalf of the U.S. Government and these terms fail to meet the U.S. Government's needs or are inconsistent in any respect with federal law, you will immediately discontinue your use of the Services and AWS Content. The terms "commercial service" "commercial computer software," "commercial computer software documentation," and "technical data" are defined in the Federal Acquisition Regulation and the Defense Federal Acquisition Regulation Supplement.

11.13 No Waivers. The failure by us to enforce any provision of this Agreement will not constitute a present or future waiver of such provision nor limit our right to enforce such provision at a later time. All waivers by us must be in writing to be effective.

11.14 Severability. If any portion of this Agreement is held to be invalid or unenforceable, the remaining portions of this Agreement will remain in full force and effect. Any invalid or unenforceable portions will be interpreted to effect and intent of the original portion. If such construction is not possible, the invalid or unenforceable portion will be severed from this Agreement but the rest of the Agreement will remain in full force and effect.

11.15 Account Country Specific Terms. You agree to the following modifications to the Agreement that apply to your AWS Contracting Party as described below:

(a) If the applicable AWS Contracting Party is Amazon Web Services Australia Pty Ltd, the parties agree as follows:

(i) If the Services are subject to any statutory guarantees under the Australian Competition and Consumer Act 2010, then to the extent that any part of this Agreement is unenforceable under such Act, you agree that a fair and reasonable remedy to you will be limited to, at our election, either: (i) supplying the Services again; or (ii) paying for the cost of having the Services supplied again.

(ii) If this Agreement is a "consumer contract" or "small business contract" as defined in the Australian Competition and Consumer Act 2010:

a. Section 7.1 will not apply to the extent the applicable Losses or damages are caused by AWS's gross negligence or criminal misconduct. For these purposes, "gross negligence" means an act or omission by an employee who has authority to bind AWS that is negligent and a wilful and significant disregard of an obvious and material risk.

b. If we are required to give prior notice under Section 1.5 or Section 3, we will give you this notice by email or a reasonably substitutable alternative means. If we modify this Agreement under Section 10 in a way that is materially adverse to you (as reasonably determined by AWS), we will give you at least 30 days' prior notice of the modification by email or a reasonably substitutable alternative means.

(b) If the applicable AWS Contracting Party is Amazon Web Services Japan G.K., the parties agree as follows:

(i) The following sentence is added at the end of Section 6.5 (Suggestions):

"The foregoing assignment includes the assignment of the rights provided under Article 27 (Rights of Translation, Adaptation, etc.) and Article 28 (Right of the Original Author in the Exploitation of a Derivative Work) of the Copyright Act of Japan, and you agree not to exercise your moral rights against us, our affiliates or persons who use the Suggestions through the consent of us or our affiliates."

(ii) The following sentences are added at the end of Section 9 (Limitation of Liability):

"THE DISCLAIMER OR THE DAMAGES CAP IN THIS SECTION MAY NOT BE APPLIED TO DAMAGES CAUSED BY EITHER PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT IF SUCH DISCLAIMER OR THE DAMAGES CAP ARE DEEMED AGAINST PUBLIC POLICY UNDER ARTICLE 90 OF THE CIVIL CODE. IN THAT EVENT, THE SCOPE OF THE DISCLAIMER SHALL BE NARROWLY CONSTRUED IN SUCH MANNER AND THE DAMAGES CAP MAY BE INCREASED BY SUCH MINIMUM AMOUNT SO THAT THE DISCLAIMER OR THE DAMAGES CAP HEREUNDER WOULD NOT BE DEEMED AGAINST PUBLIC POLICY UNDER ARTICLE 90 OF THE CIVIL CODE."

(c) If the applicable AWS Contracting Party is AWS Turkey Pazarlama Teknoloji ve Danışmanlık Hizmetleri Limited Şirketi, the parties agree as follows:

(i) The following sentence is added at the end of Section 3.2(a) (Taxes):

"If we are required to pay any stamp tax in relation to this Agreement or any other document related to this Agreement, we may charge you and you will pay us 50% of the amounts of any stamp tax paid by us."

(d) If the applicable AWS Contracting Party is Amazon Web Services Malaysia Sdn. Bhd., the parties agree as follows:

Section 9.1 (Liability Disclaimers) is deleted and replaced with the following:

"9.1 Liability Disclaimers. EXCEPT FOR PAYMENT OBLIGATIONS UNDER SECTION 7, NEITHER AWS NOR YOU, NOR ANY OF THEIR AFFILIATES OR LICENSORS, WILL HAVE LIABILITY TO THE OTHER UNDER ANY CAUSE OF ACTION OR THEORY OF LIABILITY, EVEN IF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LIABILITY, FOR (A) INDIRECT, INCIDENTAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES, (B) THE VALUE OF YOUR CONTENT, (C) LOSS OF PROFITS, REVENUES, CUSTOMERS, OPPORTUNITIES, OR GOODWILL, OR (D) UNAVAILABILITY OF THE SERVICES OR AWS CONTENT (THIS DOES NOT LIMIT ANY  SERVICE CREDITS UNDER SERVICE LEVEL AGREEMENTS)."

(e) If the applicable AWS Contracting Party is Amazon Web Services EMEA SARL, and your Account Country is located within the European Union, the parties agree as follows:

Section 7.1 (Indemnification; General) will not apply to the extent the applicable Losses or damages are caused by AWS's gross negligence or willful misconduct. In addition, none of the disclaimers or damage caps set forth in Section 9 (Limitations of Liability) will exclude or limit either party's liability for such party's gross negligence or willful misconduct.

# 12. Definitions.

"Acceptable Use Policy" means the policy located at https://aws.amazon.com/aup (and any successor or related locations designated by us), as may be updated by us from time to time.

"Account Country" is the country/territory associated with your account. If you have provided a valid tax registration number for your account, then your Account Country is the country/territory associated with your tax registration. If you have not provided a valid tax registration, then your Account Country is the country/territory where your billing address is located, except if you have a credit card associated with your AWS account that is issued in a different country/territory and your contact address is also in that country/territory, then your Account Country is that different country/territory.

"Account Information" means information about you that you provide to us in connection with the creation or administration of your AWS account. For example, Account Information includes names, usernames, phone numbers, email addresses and billing information associated with your AWS account.

"API" means an application program interface.

"AWS Confidential Information" means all nonpublic information disclosed by us, our affiliates, business partners, or our or their respective employees, contractors or agents that is designated as confidential or that, given the nature of the information or circumstances surrounding its disclosure, reasonably should be understood to be confidential. AWS Confidential Information includes: (a) nonpublic information relating to our or our affiliates or business partners' technology, customers, business plans, promotional and marketing activities, finances and other business affairs; (b) third-party information that we are obligated to keep confidential; and (c) the nature, content and existence of any discussions or negotiations between you and us or our affiliates. AWS Confidential Information does not include any information that: (i) is or becomes publicly available without breach of this Agreement; (ii) can be shown by documentation to have been known to you at the time of your receipt from us; (iii) is received from a third party who did not acquire or disclose the same by a wrongful or tortious act; or (iv) can be shown by documentation to have been independently developed by you without reference to the AWS Confidential Information.

"AWS Content" means APIs, WSDLs, sample code, software libraries, command line tools, proofs of concept, templates, advice, information, programs (including credit programs) and any other Content made available by us and our affiliates related to use of the Services or on the AWS Site and other related technology (including any of the foregoing that are provided by our personnel). AWS Content does not include the Services or Third-Party Content.

"AWS Contracting Party" means the party identified in the table below, based on your Account Country. If  you change your Account Country to one that is identified with a different AWS Contracting Party, you agree that the AWS Contracting Party identified with your new Account Country is your AWS Contracting Party, without any further action required by either party.

# AWS Contracting Party

| Account Country | AWS Contracting Party | Facsimile | Mailing Address |
| --- | --- | --- | --- |
| Australia | Amazon Web Services Australia Pty Ltd (ABN: 63 605 345 891) | N/A | Level 37, 2-26 Park Street, Sydney, NSW, 2000, Australia |
| Brazil* | | N/A | A. Presidente Juscelino Kubitschek, 2.041, |

| Account Country | AWS Contracting Party | Facsimile | Mailing Address |
|---|---|---|---|
| | Amazon AWS Serviços Brasil Ltda. | | Torre E - 18th and 19th Floors, Vila Nova Conceicao, São Paulo, Brasil |
| Canada | Amazon Web Services Canada, Inc. | N/A | 120 Bremner Blvd, 26th Floor, Toronto, Ontario, M5J 0A8, Canada |
| | Amazon Web Services India Private Limited (formerly known as Amazon Internet | | Unit Nos. 1401 to |



*Brazil is your Account Country only if you have provided a valid Brazilian Tax Registration Number (CPF/CNPJ number) for your account. If your billing address is located in Brazil but you have not provided a valid Brazilian Tax Registration Number (CPF/CNPJ number), then Amazon Web Services, Inc. is the AWS Contracting Party for your account.

**See https://aws.amazon.com/legal/aws-emea-countries for a full list of EMEA countries.

"AWS Marks" means any trademarks, service marks, service or trade names, logos, and other designations of AWS and its affiliates that we may make available to you in connection with this Agreement.

"AWS Site" means http://aws.amazon.com (and any successor or related locations designated by us), as may be updated by us from time to time.

"AWS Trademark Guidelines" means the guidelines and trademark license located at http://aws.amazon.com/trademark-guidelines/ (and any successor or related locations designated by us), as may be updated by us from time to time.

"Content" means software (including machine images), data, text, audio, video, or images.

"End User" means any individual or entity that directly or indirectly through another user (a) accesses or uses Your Content, or (b) otherwise accesses or uses the Services under your account. The term "End User" does not include individuals or entities when they are accessing or using the Services or any Content under their own AWS account, rather than under your account.

"Governing Laws" and "Governing Courts" mean, for each AWS Contracting Party, the laws and courts set  forth in the following table:

# Governing Laws and Governing Courts

| AWS Contracting Party | Governing Laws | Governing Courts |
| --- | --- | --- |
| Amazon AWS Serviços Brasil Ltda | The laws of Brazil | The courts of the City of São Paulo, State of São Paulo |
| Amazon Web Services Australia Pty Ltd (ABN: 63 605 345 891) | The laws of New South Wales | The courts of New South Wales |

| AWS Contracting Party | Governing Laws | Governing Courts |
| --- | --- | --- |
| Amazon Web Services Canada, Inc | The laws of the Province of Ontario, Canada and federal laws of Canada applicable therein | The provincial or federal courts located in Toronto, Ontario, Canada |
| Amazon Web Services EMEA SARL | The laws of the Grand Duchy of Luxembourg | The courts in the district of Luxembourg City |
| Amazon Web Services, Inc. | The laws of the State of Washington | The state or Federal courts in King County, Washington |
| Amazon Web Services | | |

"Indirect Taxes" means applicable taxes and duties, including, without limitation, VAT, service tax, GST, excise taxes, sales and transactions taxes, and gross receipts tax.



"Intellectual Property License" means the separate license terms that apply to your access to and use of AWS Content and Services located at https://aws.amazon.com/legal/aws-ip-license-terms (and any successor or related locations designated by us), as may be updated by us from time to time.

"Losses" means any claims, damages, losses, liabilities, costs, and expenses (including reasonable attorneys' fees).

"Policies" means the Acceptable Use Policy, Privacy Notice, the Site Terms, the Service Terms, and the AWS Trademark Guidelines.

"Privacy Notice" means the privacy notice located at http://aws.amazon.com/privacy (and any successor or related locations designated by us), as may be updated by us from time to time.

"Service" means each of the services made available by us or our affiliates, including those web services described in the Service Terms. Services do not include Third-Party Content.

"Service Level Agreement" means all service level agreements that we offer with respect to the Services and post on the AWS Site, as they may be updated by us from time to time. The service level agreements we offer with respect to the Services are located at https://aws.amazon.com/legal/service-level-agreements/ (and any successor or related locations designated by us), as may be updated by us from time to time.

"Service Terms" means the rights and restrictions for particular Services located at http://aws.amazon.com/serviceterms (and any successor or related locations designated by us), as may be updated by us from time to time.

"Site Terms" means the terms of use of the AWS Site located at http://aws.amazon.com/terms/ (and any successor or related locations designated by us), as may be updated by us from time to time.

"Suggestions" means all suggested improvements to the Services or AWS Content that you provide to us.

"Term" means the term of this Agreement described in Section 5.1.

"Termination Date" means the effective date of termination provided in a notice from one party to the other in accordance with Section 5.

"Third-Party Content" means Content made available to you by any third party on the AWS Site or in conjunction with the Services.

"Your Content" means Content that you or any End User transfers to us for processing, storage or hosting by the Services in connection with your AWS account and any computational results that you or any End User derive from the foregoing through their use of the Services. For example, Your Content includes Content that you or any End User stores in Amazon Simple Storage Service. Your Content does not include Account Information.

Prior Version

Learn

Resources

Developers

Help

Amazon is an Equal Opportunity Employer: Minority / Women / Disability / Veteran / Gender Identity / Sexual Orientation / Age.

Back to top

Privacy     Site terms     Your Privacy Choices      Cookie Preferences

© 2026, Amazon Web Services, Inc. or its affiliates. All rights reserved.

# EXHIBIT B

| Bill to Name | Customer Name | Legal Entity | SOT Number | Service Type | Invoice Number | Invoice Date | Due Date | Billing Period | Original Amount (Local) | Remaining Amount (USD) | Pre-Bankruptcy Amount | Post-Bankruptcy Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HealthPals, Inc. | HealthPals, Inc. | Amazon.com, Inc. | 329863515154 | Cloud | 2028485269 | Feb 1, 2025 | Feb 11, 2025 | 2025-01 | 38,024.11 | $38,024.11 | $38,024.11 | $0.00 |
| HealthPals, Inc. | HealthPals, Inc. | Amazon.com, Inc. | 329863515154 | Cloud | 2138391985 | May 1, 2025 | May 11, 2025 | 2025-04 | 32,632.37 | $32,632.37 | $32,632.37 | $0.00 |
| HealthPals, Inc. | HealthPals, Inc. | Amazon.com, Inc. | 329863515154 | Cloud | 2175732853 | Jun 1, 2025 | Jun 11, 2025 | 2025-05 | 56,112.87 | $56,112.87 | $56,112.87 | $0.00 |
| HealthPals, Inc. | HealthPals, Inc. | Amazon.com, Inc. | 329863515154 | Cloud | 2215407345 | Jul 1, 2025 | Jul 11, 2025 | 2025-06 | 57,327.48 | $57,327.48 | $57,327.48 | $0.00 |
| HealthPals, Inc. | HealthPals, Inc. | Amazon.com, Inc. | 329863515154 | Marketplace | 2250564573 | Aug 1, 2025 | Aug 1, 2025 | 2025-08 | 7,600 | $7,600.00 | $7,600.00 | $0.00 |
| HealthPals, Inc. | HealthPals, Inc. | Amazon.com, Inc. | 329863515154 | Cloud | 2252517417 | Aug 1, 2025 | Aug 11, 2025 | 2025-07 | 66,561.83 | $66,561.83 | $66,561.83 | $0.00 |
| HealthPals, Inc. | HealthPals, Inc. | Amazon.com, Inc. | 329863515154 | Cloud | 2289499585 | Sep 1, 2025 | Sep 11, 2025 | 2025-08 | 71,308.81 | $71,308.81 | $71,308.81 | $0.00 |
| HealthPals, Inc. | HealthPals, Inc. | Amazon.com, Inc. | 329863515154 | Cloud | 2327564493 | Oct 1, 2025 | Oct 11, 2025 | 2025-09 | 74,787.33 | $74,787.33 | $74,787.33 | $0.00 |
| HealthPals, Inc. | HealthPals, Inc. | Amazon.com, Inc. | 329863515154 | Marketplace | 2365259957 | Nov 1, 2025 | Nov 1, 2025 | 2025-11 | 7,600 | $7,600.00 | $7,600.00 | $0.00 |
| HealthPals, Inc. | HealthPals, Inc. | Amazon.com, Inc. | 329863515154 | Cloud | 2366141681 | Nov 1, 2025 | Nov 11, 2025 | 2025-10 | 82,778.13 | $82,778.13 | $82,778.13 | $0.00 |
| HealthPals, Inc. | HealthPals, Inc. | Amazon.com, Inc. | 329863515154 | Cloud | 2403475717 | Dec 1, 2025 | Dec 11, 2025 | 2025-11 | 43,295.37 | $43,295.37 | $43,295.37 | $0.00 |
| HealthPals, Inc. | HealthPals, Inc. | Amazon.com, Inc. | 329863515154 | Cloud | 2445622813 | Jan 1, 2026 | Jan 11, 2026 | 2025-12 | 48,564.88 | $48,564.88 | $45,431.66 | $3,133.22 |
| HealthPals, Inc. | HealthPals, Inc. | Amazon.com, Inc. | 329863515154 | Cloud | 2485718349 | Feb 1, 2026 | Feb 11, 2026 | 2026-01 | 42,265.99 | $42,265.99 | $0.00 | $42,265.99 |
| HealthPals, Inc. | HealthPals, Inc. | Amazon.com, Inc. | 329863515154 | Cloud | 2526225661 | Mar 1, 2026 | Mar 11, 2026 | 2026-02 | 40,385.77 | $40,385.77 | $0.00 | $40,385.77 |
| HealthPals, Inc. | HealthPals, Inc. | Amazon.com, Inc. | 329863515154 | Cloud | 2569362169 | Apr 1, 2026 | Apr 11, 2026 | 2026-03 | 41,699.04 | $41,699.04 | $0.00 | $41,699.04 |
| | | | | | | | | **Total:** | | **$710,943.98** | **$583,459.96** | **$127,484.02** |

# PROOF OF SERVICE

I am employed in the County of King, State of Washington. I am over the age of 18 and not a party to the within action; my business address is K&L GATES LLP, 925 Fourth Avenue, Suite 2900, Seattle, WA 98104-1158.

On May 22, 2026, I served the document(s) described as: (1) Amazon Web Services, Inc's Motion for Relief from the Automatic Stay and Memorandum of Points and Authorities; (2) Declaration in Support of Amazon Web Services, Inc's Motion for Relief from the Automatic Stay and Memorandum of Points and Authorities

☒ I checked the CM/ECF docket for this bankruptcy case and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Paul Mansdorf    paul@mansdorftrustee.com, Paul.Mansdorf@txitrustee.com,ecf.alert+Mansdorf@titlexi.com
- Brent D. Meyer    brent@meyerllp.com, bmeyer@fhlawllp.com
- Office of the U.S. Trustee / SF    USTPRegion17.SF.ECF@usdoj.gov
- Richard L. Pierotti    Rpierotti@kpmd.com
- Brandy A. Sargent    brandy.sargent@klgates.com, erika.luzuriaga@klgates.com
- Bennett G. Young    byoung@jeffer.com, jb8@jmbm.com

on the interested parties in this action by delivering a true copy thereof enclosed in sealed envelope(s) addressed as follows:

Healthpals, Inc.
2434 Sharon Oaks Drive
Menlo Park, CA 94025

Premier Research Center LLC
102 Wessington Place
Hendersonville, TN 37075

Tandum Clinical Research
1111 Medical Center Blvd.
Marrero, LA 70072

USPH Novartis Pharmaceuticals
One Health Plaza
East Hanover, NJ 07936

Kokjer Pierotti Maiocco and Duck
333 Pine St., 5th Fl.
San Francisco, CA 94104

☒ **BY MAIL:** I placed for collection and processing such envelope(s) to be deposited in the mail at Seattle, Washington with postage thereon fully prepaid to the office of the addressee(s) as indicated above. I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day, with postage fully prepaid, in the ordinary course of business herein attested to. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 22, 2026, at Seattle, Washington.

/s/ Denise Lentz
Denise Lentz

1
PROOF OF SERVICE

Case: 25-31059    Doc# 24    Filed: 05/22/26    Entered: 05/22/26 10:33:33    Page 32 of 32